### NASHVILLE, C. & ST. L. RY. v. RAILROAD COMMISSION OF ALABAMA et al.

#### (Circuit Court, M. D. Alabama, N. D.   June 24, 1909.)

INJUNCTION (§ 244*)—LIABILITIES ON BOND—ACTIONS—CONDITIONS PRECEDENT.

A court of equity, on the granting of a preliminary injunction, restraining the enforcement of a state statute fixing railroad rates, exacted a bond from the carriers who were complainants conditioned that in case the injunction should be dissolved, as wrongfully issued, complainants should pay all loss or damage caused by the granting of the same, "including overcharges or excess rates or charges to every person or firm * * * which shall sustain any such loss or damage as aforesaid, or pay any such overcharge, excess rate, or charges." On appeal from the order, the injunction was dissolved as not warranted by the evidence before the court. Held, that an action could not be maintained on the bond until final decree in the cause determining whether the rates charged by complainants exceeded the legal or just rates, as contradistinguished from the statutory rates.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 560; Dec. Dig. § 244.*]

## In Equity.

The Nashville, Chattanooga & St. Louis Railway, and four other railroad companies, filed their bills in the Circuit Court of the United States against the Railroad Commission of Alabama and others, to enjoin the enforcement of certain statutory rates, and obtained a preliminary injunction. Upon the dissolution of the injunction by the Circuit Court of Appeals, respondents moved for a reference to fix the excess which the carriers had collected above the statutory rates, and to have the same paid out of the bond which the court had exacted for the protection of shippers and passengers. This motion was resisted by the carriers, who made a counter motion that the court order a suspension of any right of action on the bond until final decree, and to so modify the terms of the bond as to show that the liability of the carriers thereon is to be determined only on final decree.

See, also, 157 Fed. 944.

Henry L. Stone, Gregory L. Smith, S. J. Bowie, Geo. W. Jones, and J. Manly Foster, for complainant.

Alex. M. Garber, Atty. Gen., H. C. Selheimer, and S. D. Weakley, for respondents.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

JONES, District Judge (after stating the facts as above). Respondents move for a reference to ascertain the various amounts due passengers and shippers on account of the charges made by the carriers, while the preliminary injunction was in force, in excess of the rates fixed by the several acts of the Legislature, and their payment now that the preliminary injunction has been dissolved. This motion is met by a counter motion to suspend any right of action on the bond on behalf of such shippers and passengers, until the legality of the rate shall be finally determined in this cause, and to modify the terms of the bond so as to clearly show the liability of the carriers thereunder depends upon the final decree in the cause.

Looking alone to the letter of the bond, no liability accrues until the injunction is dissolved or vacated as having been "wrongfully issued," or until it is determined that the rates, whose enforcement was sought by the bill of complaint to be enjoined, "should be or should have been enforced, or should not have been enjoined or suspended." The Circuit Court refused to dissolve the injunction, and upon appeal to the Circuit Court of Appeals the injunction was dissolved, not because it was "wrongfully issued," but because there had been no cross-examination of witnesses, and because, as the majority of that court considered, the matters about which they testified were largely expert opinions, and speculations of interested parties, and because in that state of the case the evidence did not sufficiently overcome, in the absence of actual test, the presumption of the reasonableness of the rates. That court made no decision whatever as to the merits of the litigation. It did not even intimate what the final result should be; that depending upon the final proof, which neither that court nor this court could have before it, when the preliminary injunction was issued and dissolved.

However, had there been a dissolution of the injunction as "wrongfully issued," still the bond then provides that the complainant "shall pay or cause to be paid all loss or damage caused by the granting of the injunction, including overcharges or excess rates or charges to every person or firm, company or corporation, which shall sustain any such loss or damage as aforesaid, or pay any such overcharge, excess rate or charges aforesaid." Until it shall have been determined that the rate charged exceeded the legal or just rate, as contradistinguished from the statutory rates, it cannot be said that the parties have sustained any loss or damage; and so, also, it cannot be determined whether the rates charged exceeded the legal or just rates, as contradistinguished from the statutory rates, until the final determination of the cause. So that by the very terms of the bond no liability can arise until it has been finally determined in the cause that the rates charged by the carrier are unreasonable and unjust. The purpose of the preliminary injunction was to preserve the rights of the parties, as far as possible, without entailing any risk of loss on either, until the final proof determines what is the proper rate, and who is the person· to finally bear the loss. The whole purpose of the injunction and of the suit would be defeated, if it now be held that the bond must be enforced without waiting for the final outcome of the litigation.

Besides, it is universally held, in the absence of specific statutes con-

trolling the subject, that the damages recoverable upon an injunction bond are never due until the final decree in the cause, and that a suit before that time is prematurely brought and cannot be maintained. This is conceded by counsel on both sides, as, also, that under the settled doctrine of the Supreme Court of the United States (Russell v. Farley, 105 U. S. 433, 26 L. Ed. 1060) the court has the power, and if necessary, should exercise it, to compass the ends of justice in such a situation as this by relaxing or modifying the conditions of an injunction bond, or by suspending the right of action thereon. The situation, in short, is this: It may turn out that the carriers will never owe the shippers and passengers anything. The final decree alone can determine that. Yet, notwithstanding this, and although the right cannot now be determined, and the bond still stands for the protection of passengers and shippers, the court is asked to inflict what would be irreparable injury to the carriers, if they finally succeed in the litigation, by compelling them now to refund any excess collected by them over the statutory rate, although the charge so exacted by them may be adjudged entirely lawful and proper, but, when once refunded, could not be recovered back from passengers and shippers. On the other hand, if the court holds the matter in abeyance until the final decree, and respondents win their case, passengers and shippers will recover the excess paid out by them above reasonable rates, and, in the meanwhile, will be subjected to no loss, and only suffer the inconvenience of delay. When such an alternative is presented to a court of conscience, there is no room to doubt what course it should adopt.

A decree will be entered granting the prayer and motion of complainants, and refusing the motion of the respondents.